18

### In re HALL.
### No. 2603.

District Court, W. D. Tennessee.
Aug. 31, 1936.

J. W. Rankin, of Martin, Tenn., and A. L. McDonald, of Louisville, Ky., for trustee and petitioning creditors.

Harry E. Jones, of Dresden, Tenn., for bankrupt F. G. Hall.

MARTIN, District Judge.

This cause comes before the judge of this court on the joint petition of the trustee in bankruptcy and certain creditors of the bankrupt, for review of an order of the referee in bankruptcy entered on April 14, 1936, denying the trustee permission to institute suit for title to certain property inherited by the bankrupt under the will of his father.

The record reveals that it is judicially admitted that S. H. Hall, father of the bankrupt, died on January 3, 1936, at 10:45 o'clock a. m., and that the voluntary petition in bankruptcy of F. G. Hall was filed in this cause, and he was adjudicated forthwith a bankrupt at 9 o'clock a. m., on said date. The record, therefore, contains a judicial admission that S. H. Hall, father of the bankrupt, died after the adjudication in bankruptcy of his son, F. G. Hall.

It may be assumed from the facts established in the record that the bankrupt hastened the filing of his petition in bankruptcy during the last illness of his father, with full knowledge of the impending death doom of his father, and that his unworthy motive was to prevent the passing to his creditors of his expectant estate under the will of his father, with the provisions of which he was familiar. His motive clearly appears to have been to defeat his creditors from participating, to the extent of their respective claims, in his expectant inheritance from his father. Does his motive, bad in morals, place his creditors in a more favorable position than they occupy under the National Bankruptcy Law? Manifestly not, under the statutes and the authorities.

Section 70a, paragraph 5, of the acts of Congress relating to bankruptcy (11 U.S.C.A. § 110 (a) (5), provides as follows: "The trustee of the estate of a bankrupt, upon his appointment and qualification, and his successor or successors, if he shall have one or more, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt as of the date he was adjudged a bankrupt, except in so far as it is to property which is exempt, to all * * * property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him."

This statute makes no provision for exceptional instances based upon bad motive or fraudulent intent of the bankrupt in filing a petition in bankruptcy for the purpose of preventing his creditors from acquiring any interest in the bankrupt's expectancy, although the expectancy may be almost immediately realizable. The statute establishes a plain line of demarcation between the old estate and the new estate of the bankrupt.

The Supreme Court of the United States has definitely construed the Bankruptcy Act against the contention of the trustee and the petitioning creditors in the case at bar. Everett v. Judson, 228 U.S. 474, 33 S.Ct. 568, 57 L.Ed. 927, 46 L.R.A. (N.S.) 154, holds that Congress, by the proviso in section 70a of the Bankruptcy Act (11 U.S.C.A. § 110 (a), fixed the date of filing the petition in bankruptcy as the line of cleavage of title as between the trustee and the bankrupt in regard to life insurance policies, and this is not affected by subsequent events such as the maturity of the policy by the suicide of the bankrupt, even though prior to adjudication.

With utmost clarity, the court said, 228 U.S. 474, at page 478 of the opinion, 33 S. Ct. 568, 569, 57 L.Ed. 927, 46 L.R.A.(N.S.) 154:

"While it is true that § 70a provides that the trustee, upon his appointment and qualification, becomes vested by operation of law with the title of the bankrupt as of the date he was adjudged a bankrupt, there are other provisions of the statute which, we think, evidence the intention to vest in the trustee the title to such property as it was at the time of the filing of the petition. This subject was considered in Acme Harvester Co. v. Beekman Lumber Co., 222 U.S. 300, 32 S.Ct. 96, 56 L.Ed. 208, wherein it was held that, pending the bankrupt proceedings, and after the filing of the petition, no creditor could obtain by attachment a lien upon the property which would defeat the general purpose of the law to dedicate the property to all creditors alike. Section 70a [11 U.S.C.A. § 110 (a)] vests all the property in the trustee, which, prior to the filing of the petition, the bankrupt could by any means have transferred, or which might have been levied upon and sold under judicial process against him. The bankrupt's discharge is from all provable debts and claims which existed on the day on which the petition for adjudication was filed. Zavelo v. Reeves, 227 U.S. 625, 630, 631, 33 S.Ct. 365, 57 L.Ed. 676 [Ann.Cas.1914D, 664]. The schedule that the bankrupt is required to file, showing the location and value of his property, must be filed with his petition.

"We think that the purpose of the law was to fix the line of cleavage with reference to the condition of the bankrupt estate as of the time at which the petition was filed, and that the property which vests in the trustee at the time of adjudication is that which the bankrupt owned at the time of the filing of the petition."

In the light of this decision of the Supreme Court, the contention that the order of bankruptcy entered by the clerk immediately upon the filing of the petition at 9 o'clock on the morning of January 3, 1936, without having been directed by either the judge or the referee of the court to do so, becomes immaterial; because the line of cleavage of title dates back to the time of filing of the petition and not to the date of adjudication, and the actions of the referee have, of course, approved the action of the clerk as to adjudication.

With respect to the taking of an expectancy in the estate of a living person as property in bankruptcy, the United States Circuit Court of Appeals for the Sixth Circuit definitely decided this question on July 10, 1926, on an appeal from the United States District Court for the Eastern District of Tennessee. The Court of Appeals held that, as an expectancy in the estate of a living person is not a property interest which passes to the trustee, directly or indirectly, it cannot become such by the death of such person after bankruptcy. In re Baker (Baker v. Shoun), 13 F.(2d) 707.

This authority answers adversely all the contentions of the trustee and the petitioning creditors, and is, of course, binding authority in this District Court. The court said, 13 F.(2d) 707, at page 708:

"Nor can it be of controlling importance that the ancestor is, at the day of bankruptcy, of an age and condition of health indicating short prospect of life. That is only fortuitous. The extreme case of that class would be where the ancestor was, at the time of the bankruptcy, mentally incompetent; but even then there might be mental recovery, followed by transfer, before death, or there might have been a will or conveyance before incompetency. * * * The principle must be that, at the date of the bankruptcy, an expectancy is not a property interest which passes to the trustee, directly or indirectly, and that it cannot change its character and become a substantial interest by something which happens after the bankruptcy.

"It is the theory of the Bankruptcy Act (Comp.St. §§ 9585–9656 [see 11 U.S.C.A.

§§ 1–112]) that it takes the property of the bankrupt at that day, but leaves to him future prospects and rights which materialize at a future day. Some such contingent future rights are definite enough to have a present worth, and have been so recognized by express provisions of the law; there is no such recognition as to an expectancy, and it cannot, in our judgment, be worked out by indirection."

The referee correctly followed the law in denying the trustee and the petitioning creditors the right to bring a suit for the interest of the bankrupt, F. G. Hall, in the estate acquired by him under the will of his father, S. H. Hall. There is no merit in the contention of the trustee and the petitioning creditors that, in refusing this permission, the referee acted prematurely; for the reason that the question of the right to bring such suit is purely one of law, and all material facts essential for its determination appear in the present state of the record.

The petition for review having been duly considered and the referee's orders and rulings being found correct, the referee's orders are in all respects approved and confirmed.